UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORIAN BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-03275 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| WARDEN PFISTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dorian Boyd alleges that his prison cell was so infested with cockroaches that one of them crawled into his ear, took up residence, and damaged his hearing. He didn't keep it to himself. Boyd complained about the roaches in handwritten letters, and he submitted formal grievances, too. Boyd later sued for damages under section 1983, claiming that the state's failure to provide medical care constituted "cruel and unusual punishment" under the Eighth Amendment.

The question is whether Boyd satisfied the exhaustion requirement before filing suit. The Prison Litigation Reform Act requires inmates to exhaust administrative remedies before bringing their claims to federal court. Boyd unquestionably complained to prison officials about cockroaches in his cell. One (but only one) of the grievances mentioned a cockroach in his ear.

Defendants move for summary judgment, arguing that his complaints to the prison officials weren't specific enough. They argue that Boyd didn't identify the responsible people by name. They also argue that Boyd didn't make it clear that he was raising a medical issue. For the reasons stated below, Defendants' motion is denied.

**Background**

Dorian Boyd is an inmate at the Pinckneyville Correctional Center, a facility run by the Illinois Department of Corrections. *See* Pl.'s Statement of Additional Facts, at ¶ 1 (Dckt. No. 71).[1] Before serving time at Pinckneyville, he was incarcerated at two other facilities in Illinois – Stateville and Menard. *Id.* This lawsuit is about his time at Stateville. *Id.* at ¶ 2.

Boyd lived in a "filthy, cockroach infested cell." *Id.* He told the warden repeatedly that his cell was unclean. *Id.* at ¶¶ 3–4. He wrote several "handwritten grievances" about the conditions. *Id.* at ¶ 3; *see also* Letter (Dckt. No. 74, at 39 of 43); Letter (Dckt. No. 74, at 41 of 43); Letter (Dckt. No. 74, at 43 of 43). He also complained directly to the warden during "a round" – presumably, one of the warden's routine inspections. *See* Pl.'s Statement of Additional Facts, at ¶ 4 (Dckt. No. 71).

One night in mid-October 2016, a cockroach allegedly crawled into Boyd's left ear. *Id.* at ¶ 5. The entry of the roach was bad enough, but soon it "became lodged" in his ear canal. *Id.* Boyd couldn't see a bug in his ear, but he was convinced it was there. *Id.* He felt a "crawling sensation in his left ear." *Id.*

The cockroach was stuck in his ear, and Boyd could not get it out by himself. *Id.* at ¶ 6. It hurt, and it caused hearing loss. *Id.* So, he started alerting prison officials. *Id.* at ¶ 7. He complained to Warden Randy Pfister, Lt. William Brown, and Correctional Medical Technician ("CMT") Olsen-Foxon. *Id.* at ¶¶ 8–9.

---

[1] Boyd filed a Statement of Additional Facts, which recounts the facts about the cell conditions, the cockroaches, and his medical problems. *See* Pl.s' Statement of Additional Facts (Dckt. No. 71). Defendants never responded to the Statement of Additional Facts (they didn't file a reply brief, either). The Court thus deems Boyd's Statement of Additional Facts admitted, to the extent the evidence supports the facts. *See Torres v. Pfister*, 2017 WL 3386120, at *2 (N.D. Ill. 2017) ("If a party fails to respond to a L.R. 56.1 statement of uncontested facts, then those facts are deemed admitted to the extent they are supported by the evidence in the record.") (citing *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012)).

2

The complaints went nowhere. None of them took Boyd seriously. *Id.* at ¶¶ 8–11. Brown "ignored Boyd's pleas for help." *Id.* at ¶ 8. Brown and Olsen-Foxon told Boyd that he was lying, and they denied him medical attention. *Id.* at ¶ 9.

At first, the warden listened to Boyd's complaints. Boyd showed him around his cockroach-infested cell, and the warden acknowledged receiving Boyd's written grievances. *Id.* at ¶ 10. The warden "frowned, wrote down Boyd's cell number, and promised that Boyd would be moved from that cell." *Id.*

Lieutenant Brown apparently didn't take kindly to the fact that Boyd had spoken to the warden. Brown told Boyd that he was not going to move cells because Boyd had "gone over his head." *Id.* at ¶ 11.

In the next two weeks, Boyd "stopped the warden repeatedly" about his cell and the cockroach. *Id.* at ¶ 12. But the warden did not give him the time of day, and simply walked away. *Id.* After three weeks, the warden stopped and listened. Boyd described the "crawling sensation in his ear," and expressed "fear[]" that he "would go deaf." *Id.* The warden told him that he had received Boyd's "letters and grievances," but that he had "so much going on." *Id.* The warden also told him that he had to "stand by his officers." *Id.* So Boyd stayed put in the same cell. *Id.*

Other members of the jail staff ignored Boyd's complaints, too. Boyd complained to Correctional Medical Technician Olsen-Foxon during one of her medical rounds. *Id.* at ¶ 13. The very first time he complained, Olsen-Foxon replied, "How is all you guys getting all these roaches in your ears?" *Id.* And, even when Boyd handed her a medical request slip, Olsen-Foxon denied his request, stating that she did not feel it was an emergency. *Id.*

Eventually, Olsen-Foxon and Brown stopped listening. Anytime Boyd complained about his cell, or about the cockroach in his ear, they would simply walk away. *Id.* at ¶ 14.

Seeing that informal complaints were getting him nowhere, Boyd began the process of filing formal grievances. *See* Pl.'s Resp. to Defs.' Local Rule 56.1 Statement of Uncontested Facts, at ¶ 20 (Dckt. No. 72, at 10 of 13).[2]

Basically, he submitted two formal grievances, one in November, and the other in December. He submitted the November grievance twice – first as an emergency grievance to Stateville, and then as a non-emergency grievance to Menard (after he transferred). Boyd received three responses. So, the Court will treat them as three grievances.

First, Boyd submitted an emergency grievance to the officials at Stateville on November 3, 2016. *See* Grievance dated 11-3-16 (Dckt. No. 74, at 22 of 43). He submitted the grievance a few weeks after the cockroach became stuck in his ear in "mid-October." *See* Pl.'s Statement of Additional Facts, at ¶ 5 (Dckt. No. 71).

For whatever reason, the grievance did not mention the roach in his ear. Instead, the grievance complained about cockroaches in his cell (generally). "The cell that I'm in is 'Infested' with roaches. . . . The roaches are literally 'Everywhere!'" *See* Grievance dated

---

[2] Defendants' Local Rule 56.1 Uncontested Statement of Facts is almost entirely generic. It provides almost no facts about the case. One has to hunt to the very end to find the dates of the grievances. *See* Defs.' Local Rule 56.1 Uncontested Statement of Facts, at ¶ 20 (Dckt. No. 59, at 10 of 13). Still, Defendants submitted copies of the November and December grievances (Dckt. No. 59-2, at 4–7 of 8), and so did Plaintiff (Dckt. No. 74, at 22–28 of 43). So there is no dispute about what Plaintiff submitted. The main difference from the submissions is that Plaintiff submitted two copies of the November grievance – one from when it was denied as an emergency by Stateville, and the other from when it was denied as a non-emergency grievance by Menard. *See* Dckt. No. 74, at 22–25 of 43. But Defendants submitted only one copy. *See* Dckt. No. 59-2, at 6-7 of 8. Defendants filed an all-inclusive copy of the November grievance, reflecting both its denial as an emergency (on November 14, 2016) and its denial as a non-emergency (on December 8, 2016). *Id.*

4

11-3-16 (Dckt. No. 74, at 23 of 43) (emphasis in original). He did not check the box stating that the grievance was about "Medical Treatment," either. *Id.*

He did complain about a roach in a body cavity, but it was his nose, not his ear. And the date changed, too. "I am constantly awakened by roaches crawling all over me. On the morning of 11-3-16 I was woken up by one in my **NOSE**!" *Id.* (emphasis in original). So he claimed about a roach that entered his nose (not his ear) on November 3. He didn't mention anything about a roach residing in his ear since mid-October.

Boyd signed the grievance on November 3, and it was received by the people who handle grievances on November 10 (the reason for the delay is unexplained). *Id.* On November 14, the Chief Administrative Officer denied Boyd's request to treat his grievance as an emergency. *Id.* The officer simply checked the box stating "an emergency is not substantiated," and that "[o]ffender should submit this grievance in the normal manner." *Id.*

At this point, the average reader is probably wondering whether there really was a cockroach in Boyd's ear, and if so, what happened to it. The Court was wondering that too. The statements of material facts are silent on that issue, leaving the most interesting part of the story shrouded in mystery. But the exhibits suggest that a roach did, in fact, exist. And it was, in fact, in Boyd's ear.[3]

---

[3] According to the grievance dated December 1, 2016 (more on that later), Boyd saw two nurses at Stateville on November 8, 2016. *See* Grievance dated 12-1-16 (Dckt. No. 74, at 27–28 of 43). The first nurse spotted a roach, and the second nurse extracted it. *Id.* at 27–28. The file from the Administrative Review Board also includes a cryptic but telling line: "11/8/16; ROACH REMOVED FROM HIS EAR CANAL." *See* ARB File (Dckt. No. 59-2, at 2 of 8). If that's right, then a cockroach was removed from Boyd's ear on November 8, before the officer denied his emergency grievance on November 14. But the Chief Administrative Officer didn't know about a roach in his ear, because his grievance dated November 3 didn't mention a roach in his ear. *See* Grievance dated 11-3-16 (Dckt. No. 74, at 23 of 43).

At some point in November (the parties don't say when), Boyd was transferred to the Menard facility.[4] He left Stateville and the roach-filled cell behind. He then submitted another copy of his grievance dated November 3, 2016. This time, he filed the grievance under normal (not emergency) procedures (again, the parties don't say when).

The result was the same. The Menard administrators denied his grievance on December 8, 2016. *See* Grievance dated 11-3-16 and denied by Menard on 12-8-16 (Dckt. No. 74, at 25 of 43).[5] The Counselor wrote: "You are no longer housed at Stateville and I cannot answer for the conditions (nor verify them). If you want to continue to grieve you will need to go through the ARB." *Id.* The Counselor didn't address a roach in his ear because the November grievance didn't mention a roach in his ear.

After submitting that grievance, but before receiving the decision, Boyd filed his third and final grievance on December 1, 2016. *See* Grievance dated 12-1-16 (Dckt. No. 74, at 27 of 43). Unlike the November grievance, the December grievance claimed for the first time that a cockroach was in his ear at Stateville, and that it was removed. He expressly highlighted his ongoing medical issues.

The December grievance told the full story about the cockroach extraction. While at Stateville, Boyd received medical attention from two nurses about the roach in his ear. The

---

[4] Boyd's grievance dated December 1, 2016, stated that he was transferred to Menard on November 11, 2016. *See* Grievance dated 12-1-16 (Dckt. No. 74, at 28 of 43).

[5] The copy of the grievance dated November 3, 2016, submitted by Plaintiff is missing the bottom of the page. The handwritten sentence by the Counselor ends with "If you want to continue to." *See* Grievance dated 11-3-16 and denied by Menard on 12-8-16 (Dckt. No. 74, at 25 of 43). Defendants submitted a complete copy with their motion for summary judgment. *See* Grievance dated 11-3-16 and denied by Menard on 12-8-16 (Dckt. No. 59-2, at 6 of 8). There is no dispute about what the Counselor wrote. Plaintiff admitted the content in his response to Defendants' statement of facts. *See* Pl.'s Resp. to Defs.' Local Rule 56.1 Statement of Uncontested Facts, at ¶ 21 (Dckt. No. 72, at 11 of 13).

second nurse peered into his ear, probed it with a device, and removed a roach. *Id.* According to the grievance, the Stateville nurse flushed Plaintiff's ear to remove the roach's body parts. *Id.*

The December grievance also complained about ongoing medical issues from the cockroach. Boyd complained that his "ear and hearing hasn't [sic] been right since the roach was pulled out [of] my ear." *See* Grievance dated 12-1-16 (Dckt. No. 74, at 28 of 43). He complained: "I'm still going to sick calls because I'm losing my hearing in the left ear due to the roach." *Id.* (emphasis in original).

Menard denied his grievance dated December 1, 2016. The Counselor noted that Boyd was receiving ongoing medical care. "MCU Menard advises you were seen on 12/1/16, 12/3/16, and have a follow-up scheduled for 12/10/16. If you have any health concerns please address it at that time." *Id.* at 27 of 43.[6]

Boyd ultimately challenged those decisions before the Administrative Review Board ("ARB"). *See* Grievance dated 11-3-16 and denied by Menard on 12-8-16 (Dckt. No. 59-2, at 6 of 8) (reflecting receipt by the ARB on December 21, 2016); Grievance dated 12-1-16 (Dckt. No. 59-2, at 4 of 8) (same). The ARB denied both grievances in May 2017. *See* ARB Decision dated 5-24-17 (Dckt. No. 74, at 30 of 43).

The ARB categorized the grievances as medical, and succinctly summarized the problem: "Medical: On 11/8/16, a cockroach crawled inside offender ear. He wants monetary compensation." *Id.* "Monetary damages are not within ARB's scope of review." *Id.* The ARB found that the "issue was appropriately addressed by the facility Administration." *Id.* It also noted that Boyd no longer had any pain: "On 3/19/17, offender saw Nurse Practitioner, offender

---

[6] Plaintiff's copy of this document is incomplete, too, because the bottom of the page is missing. *See* Grievance dated 12-1-16 (Dckt. No. 74, at 28 of 43). Defendants filed a complete copy. *See* Grievance dated 12-1-16 (Dckt. No. 59-2, at 4 of 8).

stated the pain was gone in his ear." *Id.* "[T]here have been no complaints about the ear since 3/19/17."

## Legal Standard

Rule 56 provides that the Court "shall grant" summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "'consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Here, the core facts are undisputed. It is undisputed what grievances Boyd filed, and when. It is undisputed how the Counselors, and then the Administrative Review Board, responded. There is no debate about what Boyd argued, or how the ARB ruled. So, the issue is whether Boyd did enough to exhaust his administrative remedies.[7]

---

[7] The statements of facts from the parties left a little something to be desired. Defendants' statement of facts was almost entirely generic. Most of the facts are untethered to the facts of the case, and merely

8

**Discussion**

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before bringing an action under section 1983. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a).

The language of the statute is "mandatory." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). An inmate "shall" bring "[n]o action" without first exhausting administrative remedies. *See* 42 U.S.C. § 1997e(a). The statutory text leaves no room for judge-made exceptions. *See Ross*, 136 S. Ct. at 1856–57. Judicial discretion is out the door. *Id.* "Time and again," the Supreme Court "has taken such statutes at face value – refusing to add unwritten limits onto their rigorous textual requirements." *Id.* at 1857.

To exhaust administrative remedies, a prisoner must file a grievance and follow the specific procedures laid out in the prison's administrative rules from start to finish. *See King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) ("A prisoner must comply with the specific procedures and deadlines established by the prison's policy."); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Courts

---

describe the IDOC grievance procedure, including multiple layers of unnecessary details. *See* Defs.' Local Rule 56.1 Uncontested Statement of Facts (Dckt. No. 59, at 10 of 13). It leaves the reader in the dark about the specific facts of the case. Plaintiff's response was not better. *See* Pl.'s Resp. to Defs.' Local Rule 56.1 Statement of Uncontested Facts (Dckt. No. 72). Much of Plaintiff's response is a cut-and-paste denial about the details of the grievance procedure, claiming that Defendants did not provide a copy of "Department Rule 504F." Plaintiff also makes an unsupported argument (again and again) that Defendants' affiant (David J. White) lacks personal knowledge about the grievance procedure. But he's the "Chairperson for the Office of Inmate Issues for the Illinois Department of Corrections." *See* Affidavit of David J. White, at ¶ 1 (Dckt. No. 59-1, at 2 of 5). It's hard to see that objection as anything other than a filler intended to clog up the works, for no good reason.

strictly interpret the PLRA's exhaustion requirement. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). In fact, "[u]nexhausted claims are procedurally barred from consideration." *Id.*

The exhaustion requirement isn't pointless red tape, or a banal technicality – it's an important public policy that promotes the meaningful resolution of disputes. It requires prisoners to put the state on notice about their concerns, and gives the state a chance to solve problems before they're subjected to litigation. *See Jones v. Bock*, 549 U.S. 199, 219 (2007); *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). Inmates must allow the administrative process to run its course before running to the courthouse. Litigation is the last stop, not the first step.

Failure to exhaust is an affirmative defense, so Defendants have the burden of proof. *See Jones*, 549 U.S. at 216. "Procedurally speaking, the Seventh Circuit has instructed the district courts in this circuit that as a matter of best practices, the issue of exhaustion should be resolved at the start of the case, before pretrial discovery begins." *Bruce v. Ghosh*, 2015 WL 1727318, at *4 (N.D. Ill. 2015) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). A court usually resolves exhaustion issues through a *Pavey* hearing. *Id.*

Given *Pavey*'s holding that "exhaustion is not a question for the jury at trial," the Court is now left with two options. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). The Court can deny the motion for summary judgment without prejudice and conduct a *Pavey* hearing. *Id.* at 588; *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). Or, "if the court can resolve the question of exhaustion based on the . . . documentary evidence," a hearing is "unnecessary" and the Court may simply rule on the motions. *See Nesbitt v. Villanueva*, 2011 WL 737617, at *3 (N.D. Ill. 2011).

Here, the undisputed facts demonstrate that Boyd exhausted his administrative remedies on his complaint that he suffered an injury from a cockroach in his ear.

10

I. **Stateville's Grievance Process**

"State law determines the administrative remedies that a state prisoner must exhaust for PLRA purposes." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). "Because Stateville [NRC] is an Illinois Department of Corrections facility, its grievance procedure is governed by Illinois's Administrative Code." *See Lewis v. Pfister*, 2019 WL 5577164, at *1 (N.D. Ill. 2019); 20 Ill. Admin. Code § 504.800. To meet the exhaustion requirement, Boyd had to take all steps required by Stateville NRC's grievance system. *See Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

Defendants don't challenge the *process* by which Boyd pursued his grievances. That is, they don't argue that he skipped a step. Instead, they challenge the *content* of the grievances. Therefore, the only portion of Illinois law relevant here is the section about the necessary content for a grievance. That section requires formal grievances to contain "actual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* Ill. Admin. Code tit. 20, § 504.810.

II. **Alleged Procedural Failures**

Defendants argue that Boyd never exhausted his administrative remedies because his grievances failed to mention any of the Defendants by name, and because he failed to mention "any issues in regard to his receipt of medical treatment." *See* Defs.' Mem. in Supp. Mtn. for Summ. J., at 5–6 (Dckt. No. 60) (underline in original) (arguing that Boyd "failed to name Defendants" and "failed to specifically grieve Defendants' alleged failure to provide him access to medical treatment").

11

Boyd argues that he fully exhausted both of his grievances. And he points out that the Administrative Review Board eventually adjudicated both grievances, so the alleged issues are water under the bridge. *See* ARB Decision dated 5-24-17 (Dckt. No. 74, at 30 of 43). Also, the ARB itself considered the issue a medical issue, as the decision itself reveals.

### A. Which Grievance Is at Issue

At the outset, only one of the grievances is truly at issue. The exhaustion requirement is claim specific. That is, the original grievance must have "alerted the prison to the nature of the wrong for which redress is sought" in federal court. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). That rule follows common sense – the purpose of the exhaustion requirement is to make sure the prison learns about the prisoner's claim, and has a chance to address it before the court gets involved. *Pyles v. Nwaobasi*, 829 F.3d 860, 867 (7th Cir. 2016) ("The purpose of the exhaustion requirement is to ensure that prisons have a fair opportunity to correct their own errors through the grievance process.") (citations omitted). Complaining to the prison about one thing – and the court about another – doesn't serve that function.

Boyd advances two claims in this lawsuit, and both of them allege that he suffered an injury from a cockroach in his ear. *See* Third Am. Cplt. (Dckt. No. 39). Count I alleges that the prison staff ignored his "serious medical need" because of a "cockroach lodged in his left ear." *Id.* at ¶ 38. Count II alleges that Boyd suffered "severely diminished hearing capacity in his left ear after the removal of a cockroach," and that one of the Defendants (Dr. Smith) was deliberately indifferent to his ongoing medical needs. *Id.* at ¶ 44.

The common thread in each claim is the existence of a cockroach in Boyd's ear. The complaint does not include a claim about the conditions of his cell generally. And it does not

12

allege that Defendants (or cockroaches, for that matter) harmed him any other way. What counts is the roach in the ear.

Boyd submitted the November grievance twice – first as an emergency (to Stateville), and then as a non-emergency (to Menard). *See* Grievance dated 11-3-16 (Dckt. No. 74, at 23 of 43). Those grievances complained about cockroaches in his cell and in his nose. *Id.* But they did not put the prison on notice that Boyd had a cockroach his ear. He did not complain about ongoing medical problems from that roach, either.

But Boyd's third formal grievance, filed December 1, is different. The December grievance described the cockroach in his ear in detail, and complained about ongoing medical issues. Boyd explained that his "ear and hearing hasn't [sic] been right since the roach was pulled out [of] my ear." *See* Grievance dated 12-1-16 (Dckt. No. 74, at 28 of 43). Further, he contended: "I'm still going to sick calls because I'm losing my hearing in the left ear due to the roach." *Id.* (emphasis in original). So, the December grievance put the prison on notice that he had a cockroach in his ear and that he had medical issues.

So the question is whether Boyd exhausted his administrative remedies when he appealed the December grievance about the cockroach in his ear.

### B. Failure to Name Names

The Court turns first to the failure to name names. Boyd basically argues that the ARB itself didn't demand more specificity about who, exactly, ignored his complaints about the roach. The prison decided his grievances on the merits, and didn't explicitly rely on a procedural shortcoming like a failure to specifically name the Defendants. *See* Pl.'s Resp. to Mtn. for Summ. J., at 9 (Dckt. No. 73). Boyd argues that their merits-based decision means that he

13

properly exhausted the claim. As Boyd sees it, Defendants are demanding more specificity than the ARB itself required.

Boyd is right. A procedural failure constitutes a failure to exhaust if the prison officials rely on that procedural failure to justify dismissal in the first place. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (rejecting defendants' argument that defendant failed to exhaust because he didn't name defendants because the grievance was rejected on the merits "at every stage of review without any indication from prison officials that it was procedurally deficient"); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *Lewis v. Pfister*, 2019 WL 5577164, at *3 (N.D. Ill. 2019) (finding plaintiff exhausted his administrative remedies even without naming the responsible party because "[the prison officials'] decision not to invoke a state procedural rule relieves plaintiff from having to comply with it").

Indeed, when prison officials address an inmate's grievance on the merits, without rejecting it on procedural grounds, "the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id.* (citing *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005)); *see also Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("If the tribunal decides the merits, without treating procedural default as an independent ground of decision, then the federal court infers that the parties must have done whatever the tribunal deemed necessary to permit a reliable decision on the merits."). There is no need to bounce a grievance on procedural grounds now, when the prison officials heard the grievance on the merits.

In Boyd's case, the prison officials denied his December grievance on the merits. The Counselor responded that Boyd was receiving ongoing medical care. *See* Grievance dated

12-1-16 (Dckt. No. 74, at 27 of 43). She detailed his schedule at the health center, noting that he was seen on "12/1/16, 12/3/16," and that he had a "follow-up scheduled for 12/10/16." *Id.*

In May 2017, the Administrative Review Board reviewed the November and December grievances and affirmed the dismissal. *See* ARB Decision dated 5-24-17 (Dckt. No. 74, at 30 of 43). The ARB summarized Boyd's complaints: "Medical: On 11/8/16, a cockroach crawled inside offender ear. He wants monetary compensation." *Id.* As before, the ARB also denied Boyd's grievance, finding that "the issue was appropriately addressed by the facility Administration." *Id.*

So, Boyd's grievance was denied on the merits. The Counselor did not fault Boyd for failing to name names, and neither did the ARB. Defendants are complaining about a procedural problem that the prison officials and the ARB did not find problematic.

The Seventh Circuit addressed a similar situation in *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011). In *Maddox*, defendants argued that the plaintiff failed to exhaust because he did not name the defendants or describe them in his grievance. They raised no other issues. The Seventh Circuit rejected defendants' argument, and found that he properly exhausted his complaint. The Court of Appeals reasoned that "Maddox's compliance with the grievance process was never in question. Maddox's grievance was rejected on the merits at every stage of review without any indication from prison officials that it was procedurally deficient." *Id.*

So too here. Indeed, the prison officials were on notice of Boyd's complaint; in fact, they accurately summarized it at the ARB stage: "Medical: On 11/8/16, a cockroach crawled inside offender ear. He wants monetary compensation." Like in *Maddox*, Boyd's failure to name the defendants was a "mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id.* at 722.

15

### C. Raising a Medical Issue

Defendants also argue that Boyd's grievances failed to mention "<u>any</u> issues in regards to his receipt of medical treatment as is alleged in this matter." *See* Defs.' Mem. in Supp. of Mtn. for Summ. J., at 5 (Dckt. No. 60). That argument misses the mark, too.

The December grievance mentioned ongoing medical issues. In fact, the existence of medical care was the reason for denying the grievance. The Counselor denied it because Boyd had just visited the health center and had a follow-up appointment scheduled for December 10. *See* Grievance dated 12-1-16 (Dckt. No. 74, at 27 of 43) ("**Counselor's Response:** HCU Menard advises you were seen on 12/1/16, 12/3/16 and have a follow-up scheduled for 12/10/16. If you have any health concerns please address it at that time.") (emphasis in original). The prison knew that Boyd was complaining about medical issues, and denied the grievance because – in the Counselor's estimation – the prison was providing adequate care.

The ARB understood the gist of Boyd's complaint, too. The ARB checked the box that said "Medical," and then flagged the fact that a cockroach was in his ear. *See* ARB Decision dated 5-24-17 (Dckt. No. 74, at 30 of 43).

And from a common sense perspective, everyone knows that a cockroach in one's ear presents a medical issue. What else could it be?

The exhaustion requirement's "primary purpose is to 'alert the state' to the problem and 'invite corrective action.'" *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)) (cleaned up). So, the Seventh Circuit has held that an inmate's complaint will suffice for exhaustion purposes if it provides notice of "'the nature of the wrong for which redress is sought.'" *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *see Turley*, 729 F.3d at

650 ("[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement.").

The prison officials and the ARB heard Boyd's complaints loud and clear – Boyd complained about pain and potential hearing loss caused by a roach in his ear. They heard him out, but ruled against him. That is enough to satisfy the exhaustion requirements.

## Conclusion

For the reasons stated above, the Court denies the Defendants' motion for summary judgment.

Date: October 30, 2020

Steven C. Seeger
United States District Judge